**In the Interest of M.A.J., a minor child.**

**No. 49612.**

Missouri Court of Appeals, Eastern District, Division Three.

April 29, 1986.

Dorothy E. Schuchat, St. Louis, for appellant.

Brian Paul Seltzer, Nancy Lee Sido, Clayton, for respondent.

KAROHL, Presiding Judge.

Mother appeals the termination of her parental rights under § 211.447.2(2)(b) RSMo Cum.Supp.1982 for her minor daughter, M.A.J., by the Juvenile Court of St. Louis County. We affirm.

The record on appeal reveals the following facts: M.A.J. was born to C.A.J. (mother) on December 16, 1976, and she came under the jurisdiction of the St. Louis County Juvenile Court on February 18, 1977. M.A.J. has been in foster care continuously since 1977, remaining with the same family for all but an initial few months. This family now desires to adopt her.

Mother has expressed willingness to try to regain custody of her daughter and has

worked towards that end with the Division of Family Services (DFS) in drawing up two Service Plans. The first plan was approved on March 24, 1980 and the second plan was court-approved on September 9, 1983.

Under the 1980 Service Plan, mother had several affirmative obligations. She was to visit with M.A.J. at least once each month and was to initiate each visit by contacting her DFS worker by the seventh day of each month. She was also to keep DFS apprised of major changes in her life such as those of employment or address. Mother was to meet with her DFS worker once each month, obtain a psychological evaluation and undergo any necessary therapy.

DFS was to encourage mother to visit her daughter by contacting mother if she failed to initiate visits. The assigned worker was also to help schedule mother's monthly meetings with DFS and help obtain necessary funds for counseling or child support.

Under the 1983 Plan, mother had substantially the same obligations although she was to visit her daughter twice each month. Additionally, mother was to document her efforts to seek employment as well as any money earned. She was also to telephone M.A.J. weekly on arranged dates and times.

Her DFS worker's duties continued to be to counsel and assist her in fulfilling her duties under the Service Plan. Such assistance included referring her when necessary to affordable therapists, employment services, vocational rehabilitation and housing services. The worker was also to assist her in arranging phone calls and visits.

Both the 1980 and the 1983 Plans contained this clause:

It is the hope of the Division of Family Services that full cooperation with this plan will help to have your child placed with you on a permanent basis. However, failure by the parent to complete the tasks of this plan may be grounds for Termination of Parental Rights. If after at least six months from the date of this plan the Division of Family Services has fulfilled its obligations but the parent has failed to fulfill reasonably her obligations, the Division of Family Services may request the Juvenile Court to terminate the parent's rights to the child. This would mean that if the parents' rights are terminated the parent would never see the child again, and the child would be placed for adoption.

The Juvenile Office filed a Petition to Terminate Parental Rights on December 15, 1983 and amended its petition on April 26, 1984.

The hearing on the petition was held on December 3 and 4, 1984, and the Juvenile Court of St. Louis County rendered its decision on December 11, 1984. The Court specifically found, *inter alia*, the following: that mother had participated in negotiating both plans, was aware of their contents and signed them freely; she was aware of potential consequences if she failed to comply with the Plans; mother failed to reasonably comply with the 1980 Plan and with the 1983 Plan despite all reasonable effort made by DFS; all contacts made by mother between February, 1983, and October, 1984, were token and the conditions required under § 211.447.-2(2)(b) do exist. Finally,

The Court finds that it is in the best interest and welfare of the child that the parental rights of both the mother and father [1] of the child be terminated and it is fit and proper that the following order of termination of parental rights be entered since the best interest and welfare of the child so demands.

From these findings and order the mother appeals, claiming trial court error because the juvenile officer failed to show clearly, cogently and convincingly that she

---

**1.** Although the father's identity is unclear, permission to terminate their parental rights was granted by both men named as fathers.

neglected her daughter within the meaning of § 211.447.2(2)(b) RSMo Cum.Supp.1982.

In reviewing this proceeding, we must give deference to the trial court's assessment of the credibility of witnesses before it and we will affirm unless the judgment lacks substantial evidence for its support, or it is against the weight of the evidence, or it erroneously declares or applies the law. *In Interest of M.N.M.*, 681 S.W.2d 457, 459 (Mo.App.1984). "In a court-tried case, the trial judge must decide that the evidence clearly, cogently and convincingly demonstrates the existence of one of the conditions forming the basis of the termination petition." *In the Interest of D.G.N.*, 691 S.W.2d 909, 912 (Mo. banc 1985). This particular petition alleged "neglect" under § 211.447.2(2)(b) RSMo Cum. Supp.1982, which here means that the parent allegedly failed to provide her child with a "continuing relationship" for six months prior to the filing of this petition. The juvenile officer must show that,

> An appropriate plan approved by the court has not been reasonably complied with by the parent or has been unsuccessful, and that the parents were notified of the court approved plan and had at least ten days in which to request a hearing on such plan. Token efforts by the parent shall not be sufficient to defeat a finding of neglect. 211.447.2(2)(b) RSMo Cum.Supp.1982.

Upon such a showing, the trial judge may terminate parental rights if he finds such action to be in the best interests of the child.

The parties agree that all of the above requirements were met by the required standard of proof except for the allegation that mother had not reasonably complied with the plan and that all her visitation efforts were "token." Mother argues trial court error in that her efforts were more than "token" for the required six month period and also avers that the DFS workers failed to make all reasonable efforts to fulfill their obligations under the plan.

Evidence adduced at trial clearly supports the finding that mother's compliance with both the 1980 and 1983 plans was deficient on the issue of neglect. Mother substantially complied with the visitation and notification requirements of the first service plan from March of 1980 until February of 1983. During this period she did not have a steady income but usually received room and board in exchange for services. These services sometimes involved child care among other household duties. Mother did participate in formal psychological counseling from December 1981 to May 1982, and received informal counseling after that date as her therapist became her friend.

Mother's compliance with the 1980 Plan began to falter when her first DFS worker left the agency to be replaced by a new worker, who assumed responsibility for her case on March 1, 1983. The new worker failed to contact her until May. She met with the new worker but failed to request visits until July 1983. She had earlier been discussing a new service plan with her first worker, who felt she needed to visit her daughter at least twice monthly. In July 1983, she signed the 1983 Service Plan although she did not agree with some of its contents, especially those relating to psychological counseling. At trial, she denied understanding the full import of failing to comply with the Plan, although she had read the Plan and had its clauses explained to her before signing.

Mother moved to Michigan in August 1983, and remained there until January, 1984. She did not contact DFS during this period. DFS obtained her address, sent her copies of the 1983 Plan approved by the court on September 9, 1983, sent her notices of a review hearing on December 1, 1983, and finally sent her a letter notifying her of a Termination of Parental Rights hearing scheduled for January 1984, pursuant to a petition filed December 15, 1983. Mother's contact with her daughter was also very limited during these five months. She did not visit M.A.J. at all, but telephoned three times and wrote twice.

Mother returned to St. Louis in January 1984, to attend the Permanency Planning

Hearing scheduled pursuant to termination proceedings. She visited with M.A.J. on January 27, 1984. During the entire 1984 year, mother met with her DFS worker only once, although she telephoned her worker six times. Mother met with her daughter three times between April and December of 1984. As her parental rights were terminated in December, 1984, it is clear that she has failed under the statute to comply with her court-approved Plan as to visitation and DFS contact for the required six month time span.

Additional evidence presented in court showed that M.A.J. had a stable home life for seven and one-half of her eight years with her foster family who wished to adopt her. M.A.J. had indicated to her foster mother that she did not want to see her natural mother any more, and her behavior showed that the periodic visits made M.A.J. upset and distracted. The case worker who occasionally observed visits between M.A.J. and mother termed them merely "casual, friendly."

■ This record supports the finding that mother failed for six months to comply with a court-approved Plan, that her efforts during that time were token and that termination of parental rights were in the best interests of the child.

■ As to mother's contention that DFS failed to make all reasonable efforts to comply with its own obligations, we note that the statutory language does not require this finding. *See* § 211.447.2(2)(b) RSMo Cum.Supp.1982. Further, although not required, the record supports the trial court's finding and is not an abuse of discretion.

SIMON and GARY M. GAERTNER, JJ., concur.